**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**
_____

AMERICAN SPECIALTY OILS CO. and
SAFIE SPECIALTY FOODS CO. INC.

      Plaintiffs,

v.                                                                Case No. 20-11017

eWORKPLACE SOLUTIONS INC.
d/b/a BATCHMASTER SOFTWARE and
DIMENSION FUNDING, LLC

      Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT BATCHMASTER'S MOTION TO**
**DISMISS, GRANTING DEFENDANT DIMENSION'S MOTION TO DISMISS, AND**
**DISMISSING THIS CASE**

      Plaintiffs American Specialty Oils Co. and Safie Specialty Foods Co. bring this

action for breach of contract, fraudulent inducement to contract, and conspiracy to

commit fraud against Defendant eWorkplace Solutions d/b/a BatchMaster Software

("BatchMaster"). (ECF No. 4, PageID.37-45.) Plaintiffs bring a claim under conspiracy to

commit fraud against Defendant Dimension Funding, LLC ("Dimension"). (*Id.*,

PageID.44-45.)

      Before the court are two motions to dismiss, one from each defendant. (ECF

Nos. 7, 11.) The motions have been fully briefed, (ECF Nos. 13, 14, 16, 17), and the

court does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons

stated below, the court will grant Defendant BatchMaster's motion to dismiss and grant

Defendant Dimension's motion to dismiss.

# I. BACKGROUND

The following are facts as alleged in Plaintiffs' complaint. In a motion to dismiss, the court accepts Plaintiffs' factual allegations as true but makes no overt finding as to truth or falsity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant BatchMaster develops business management software for companies operating in the food and beverage industries. (ECF No. 4, PageID.34, ¶ 11.) Plaintiffs are separate companies. Plaintiff American Specialty Oils manufactures oil used in food products while Plaintiff Safie Specialty Foods produces pickled foods such as dill pickles. (*Id.*, PageID.32, ¶¶ 1-2.) Defendant BatchMaster and Plaintiffs entered into agreements by which Plaintiffs paid Defendant to provide food process management software. (*Id.*, PageID.34, ¶¶ 12-13.) According to the complaint, the software proved defective which negatively affected Plaintiffs' businesses. (*Id.*, PageID.35-36, ¶¶ 18-20.)

Defendant Dimension provides financing for business software. (*Id.*, PageID.36, ¶ 21.) Plaintiffs and Defendant Dimension entered into agreements to finance Plaintiffs' purchases of Defendant BatchMaster's software. (*Id.*, PageID.36, ¶¶ 22-23.) According to Plaintiffs, Defendant Dimension knew the software was defective and acted in concert with Defendant BatchMaster to fund the purchases. (*Id.*, ¶¶ 24-26.)

Plaintiffs filed their complaint against Defendant BatchMaster in April 2020. (ECF No. 1.) They amended the complaint in May 2020, adding Defendant Dimension Funding. (ECF No. 4.) Defendants filed motions to dismiss in lieu of filing answers. (ECF Nos. 7, 11.)

## II. STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) a party can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must present "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "[A] formulaic recitation of a cause of action's elements will not do." *Id.*

When reviewing a motion to dismiss, the court "may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the court may consider "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

3

Defendant BatchMaster moves to compel Plaintiffs into arbitration citing Federal Rule of Civil Procedure 12(b)(1). (ECF No. 11, PageID.123.) Rule 12(b)(1) permits dismissal of a complaint due to "lack of subject-matter jurisdiction." The Sixth Circuit has stated that a motion to compel arbitration "is more properly construed as a motion to dismiss under Rule 12(b)(6)." *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014); *accord Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018). Courts have also reviewed requests to compel arbitration as stand-alone motions, separate from Rule 12(b). *See, e.g.*, *NCR Corp. v. Korala Ass., Ltd*, 512 F.3d 807, 812 (6th Cir. 2008).

### III. DISCUSSION

The court will first address Defendant BatchMaster's motion to dismiss and will then turn to Defendant Dimension's motion.

### A.  Defendant BatchMaster's Motion to Dismiss

Defendant BatchMaster argues that the parties' dispute is covered by arbitration clauses. (ECF No. 11, PageID.118-21.) It cites provisions in both Plaintiffs' contracts that establish dispute resolution processes:

14.7 Dispute Resolution. It is agreed by Licensee and BSI that any dispute(s) arising related to software, products, services or support rendered under this Agreement or any payments due, shall be first reported by following the steps described below prior to resorting to any legal remedies available under this agreement.

    (i) Problem Escalation . . .

    (ii) Mediation . . .

14.8 Available Legal Remedies. In the event that any reported issues are not resolved through mediation as provided for above, the parties agree that the legal remedies available for such unresolved disputes will be through submission to arbitration as provided by California law, and not by

4

a lawsuit or by resorting to any court process except as California law provides for judicial review of arbitration proceedings. Both parties to this Agreement forfeit any rights to have any such disputes decided in a court of law by a judge or before a jury, and instead are accepting the use of arbitration.

> (i) Arbitration . . . Arbitration proceedings shall be conducted in Orange County, California . . .

> (iii) Parties intend that the aforementioned Dispute Resolution and Arbitration procedures in clauses 14.7 and 14.8 shall apply to all software or other products provided or support and services rendered, including those items covered under previous applicable Purchase Documents.

(ECF No 11-3, PageID.158, Plaintiff Safie Specialty Foods' Agreement; ECF No. 11-4, PageID.171, Plaintiff American Specialty Oils' Agreement.)

Plaintiffs do not contest that their contracts with Defendant BatchMaster contain arbitration clauses, and that the clauses would apply to this dispute if they are valid. Instead, Plaintiffs contend that the arbitration agreements are void because Defendant fraudulently induced them to enter into the software licensing agreements.[1] (ECF No. 14, PageID.271; *see also* ECF No. 4, PageID.41-44, Plaintiffs' Complaint.)

Under the Federal Arbitration Act ("FAA"), courts may "compel[] arbitration when one party has failed or refused to comply with an arbitration agreement." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626-27 (6th Cir. 2004) (citing 9 U.S.C. § 4). There is a "strong federal policy in favor of arbitration." *Huffman v. Hilltop Cos.*, 747 F.3d 391, 395 (6th Cir. 2014). "[A]ny doubts concerning the scope of arbitrable issues should be

---

[1]    Plaintiffs also argue that they are not bound by the agreements' merger clause barring consideration of parole evidence. (ECF No. 14, PageID.271-73.) They cite the Michigan Court of Appeals decision *Custom Data Solutions Inc. v. Preferred Capital Inc.*, 274 Mich. App. 239, 733 N.W.2d 102 (2007). *Custom Data Solutions* does not analyze or mention an arbitration clause and is thus does not affect the court's inquiry.

resolved in favor of arbitration." *Id.* at 627 (quoting *Moses H. Cone*, 460 U.S. 1, 24-25 (1983)). "There is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003)).

Consistent with this policy preference, courts have consistently rejected attempts to avoid arbitration clauses through allegations of fraudulent inducement. "[F]raud in the procurement of an arbitration contract, like fraud in the procurement of any contract, makes it void and unenforceable." *Arnold v. Arnold Corp.-Printed Comm'ns for Bus.*, 920 F.2d 1269, 1277 (6th Cir. 1990) (quoting *Moseley v. Elec. & Missile Facilities, Inc.*, 374 U.S. 167, 172 (1963)). "[I]f the claim is fraud in the inducement of the arbitration clause itself . . . the federal court may proceed to adjudicate it." *Id.* (quoting *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)). However, "[the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* (quoting *Prima Paint*, 388 U.S. at 404). Thus, "when claims involve 'the validity of the contract as a whole' and not just the arbitration agreement, 'such claims are to be brought before the arbitrator, not the district court in deciding a petition to compel arbitration.'" *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003) (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 892 (6th Cir. 2003)). For a federal court to retain jurisdiction, "the complaint must contain a well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement*, that would provide grounds for the revocation of the agreement to arbitrate." *Burden v.*

*Check Into Cash of Ky., LLC*, 267 F.3d 483, 491 (6th Cir. 2001) (quotations removed) (emphasis in original); *see also Highlands Wellmont Health Network, Inc.,* 350 F.3d at 576 (enforcing arbitration clause where there were "no separate allegations in the . . . complaint that [the defendant] fraudulently induced [the plaintiff] to agree to an arbitration clause").

Here, the complaint alleges Defendant BatchMaster "made material representations regarding the capabilities of [its] software" and "failed to advise Plaintiffs of . . . serious and ongoing problems [with the program]." (ECF No. 4, PageID.41, ¶ 45, PageID.42, ¶ 49.) As a result, Defendant BatchMaster "induce[d] Plaintiffs to enter into the Software License Agreements." (*Id.*, PageID.42, ¶ 51-52.) Plaintiffs allege that because they were fraudulently induced to enter into the agreements, the entire contract as a whole, including the "provisions governing law § 14.6, Dispute Resolution Procedure at § 14.7, and Limitations of Liability and Damages at § 12" are void. (*Id.*, PageID.43, ¶ 56.)

The Sixth Circuit has repeatedly held that "pleading . . . an arbitration clause 'was part of a broader fraudulent scheme without more . . . is [not] sufficient to overcome the strong federal policy in favor of arbitration." *Burden*, 267 F.3d at 491 (quoting *Arnold*, 920 F.2d at 1280-81). That is the essence of Plaintiffs' claims here. The complaint includes no allegations of fraud "particular to the arbitration agreements [and] separate from the [software licensing] agreements." *Id.* at 491. There are no allegations detailing how Defendant BatchMaster fraudulently induced Plaintiffs to sign onto an arbitration clause. Instead, the allegations recite Defendant BatchMaster's alleged misrepresentations regarding the quality of its software and the value of the contract to

Plaintiffs generally. (*See* ECF No. 4, PageID.41, ¶¶ 45-48.) Plaintiffs' claim of fraudulent inducement "relates to the contract as a whole," of which the arbitration provisions are only a part. *Highlands Wellmont Health Network, Inc.,* 350 F.3d at 576.

There is nothing to differentiate Plaintiffs' allegations of fraud as to the entire software licensing contracts and the arbitration clauses specifically. Plaintiffs may have a valid fraudulent inducement claim. But that question must be reviewed by an arbitrator, who, under federal law, has the primary authority to determine "the validity of [a] contract as a whole." *Fazio*, 340 F.3d at 395.

Plaintiffs bring three claims against Defendant BatchMaster: breach of contract, fraudulent inducement, and civil conspiracy. The parties' arbitration agreements cover "any dispute(s) arising related to software, products, services or support rendered under th[e] Agreement[s] or any payments due." ECF No 11-3, PageID.158; ECF No. 11-4, PageID.171.) The Sixth Circuit has noted that contract language such as "arising out of" and "related to" have "extremely broad" scope. *Highlands Wellmont Health Network, Inc.,* 350 F.3d at 578 (quoting *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983)); *Fazio*, 340 F.3d at 396. To determine whether claims fall within such arbitration clauses, "courts ask if an action could be maintained without reference to the contract or relationship at issue." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007) (quoting *Fazio*, 340 F.3d at 395).

Plaintiffs' first claim alleges that "Defendant BatchMaster . . . breached the contracts by delivering . . . defective software." (ECF No. 4, PageID.40, ¶ 41.) This claim directly falls within the terms of the contract and is subject to arbitration. Plaintiffs' second claim is fraudulent inducement. As described above, the fraudulent inducement

claim expressly references the software licensing agreements; Plaintiffs allege

Defendant BatchMaster harmed them by inducing them to enter into the agreements.

(ECF No. 4, PageID.42-43, ¶¶ 51-52, 57.) Finally, Plaintiffs' third claim is that Defendant

BatchMaster worked with Defendant Dimension to "put forth material

misrepresentations regarding the quality of [Defendant] BatchMaster's product"

provided through the software licensing agreements. (*Id.*, PageID.44, ¶ 64.) Defendants

allegedly worked together to make Defendant Dimension Plaintiffs' exclusive financing

option for the software. (*Id.*, ¶ 61.) Plaintiffs allege they were damaged by having to pay

"the cost of software licenses [and] cost of installation," among other injuries. (*Id.*,

PageID.45, ¶ 68.) This claim is intimately tied to the commercial relationships created

through Plaintiffs and Defendant BatchMaster's contracts. *See Nestle Water N. Am.,

Inc.*, 505 F.3d at 505 ("In the course of interpreting [the relevant claim], it is almost

certain that reference will be made to [the contract with an arbitration clause]."); *Fazio*,

340 F.3d at 395 ("The lawsuit by necessity must describe why [the parties were

interacting] . . . and what [their] obligations were.").

"[W]ithout reference to the contract[s] or relationship[s]" between Plaintiffs and

Defendant BatchMaster, the claims against Defendant BatchMaster cannot be

maintained. *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d at 504. They are covered

by the parties' arbitration agreement and must be dismissed.[2] 9 U.S.C. § 4.

---

[2]      In reviewing motions to compel arbitration, courts also consider whether, "if
federal statutory claims are asserted, . . . Congress intended those claims to be
nonarbitrable." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In addition, "if
the court concludes that some, but not all, of the claims in the action are subject to
arbitration, it must determine whether to stay the remainder of the proceedings pending
arbitration." *Id.* Nonetheless, Plaintiffs do not allege Defendant BatchMaster violated

**B.  Defendant Dimension's Motion to Dismiss**

Neither Plaintiffs nor Defendant Dimension seek to compel arbitration of their dispute. The sole claim against Defendant Dimension is civil conspiracy. The claim fails under Federal Rule of Civil Procedure 9(b).

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 670 N.W.2d 569, 580 (2003) (quoting *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 486 N.W.2d 351, 358 (1992)). Civil conspiracy is not a claim of its own; "it is necessary to prove a separate, actionable tort." *Id.* (quoting *Early Detection Center, PC v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 403 N.W.2d 830, 836 (1986)).

Here, Plaintiffs have entitled Count III as "Conspiracy to Commit Fraud." (ECF No. 4, PageID.44.) Although not explicitly stated the in the complaint, Plaintiffs explain in their briefing that the underlying tort claim is fraudulent inducement to contract.[3] (ECF No. 13, PageID.245.)

---

federal statute, and all of Plaintiffs' claims against Defendant BatchMaster will be dismissed.

[3]    Defendant Dimension argues that Plaintiffs did not bring a fraudulent inducement claim. (ECF No. 16, PageID.347.) While greater specificity in the complaint would have been helpful, the court disagrees with Defendant Dimension's analysis. Plaintiffs' fraud claim sufficiently implies fraudulent inducement. Plaintiffs allege they entered into agreements to finance and purchase business management software after Defendants made certain material misrepresentations. (*Id.*, PageID.44, ¶¶ 66-67.) Plaintiffs also allege their contracts with Defendant Dimension are void as a result of the fraud. (*Id.*, PageID.45, ¶ 69.)

The elements of a fraudulent inducement claim are the same as a general fraud claim:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Custom Data Sols., Inc. v. Preferred Capital, Inc.*, 274 Mich. App. 239, 733 N.W.2d 102, 104-05 (2006) (citing *Belle Isle Grill Corp v Detroit,* 256 Mich. App. 463, 666 N.W.2d 271, 280 (2003)).

Allegations of fraud are subject to enhanced pleading requirements. Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." "The [r]ule's purpose is to alert defendants as to the particulars of their alleged misconduct so that they may respond. [It] is also designed to prevent fishing expeditions, . . . to protect defendants' reputations from allegations of fraud, . . . and to narrow potentially wide-ranging discovery to relevant matters." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466-67 (6th Cir. 2011) (quotations removed). "In complying with Rule 9(b), a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). Phrased differently, "the plaintiff [must] specify the who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quotations removed). The court will "not accept claims that

consist of no more than mere assertions and unsupported or unsupportable conclusions." *Id.* at 876.

Plaintiffs' allegations of fraud on the part of Defendant Dimension fail to meet Rule 9(b)'s enhanced pleading standard. The allegations are conclusory and do not adequately inform Defendant Dimension of the nature of the claim. *See Chesbrough*, 655 F.3d at 466-67. Plaintiffs allege generally that Defendants "engaged in a concerted effort to misrepresent a faulty product and defraud Plaintiffs." (ECF No. 4, PageID.44.) Yet there are no specific allegations describing acts Defendant Dimension took to conspire with Defendant BatchMaster. Plaintiffs merely conclude that Defendants "acted in concert" and that Defendant Dimension "was aware of [Defendant BatchMaster's] faulty product." (*Id.*, PageID.36, 44.) However, the complaint includes no specifics as to how or when the fraudulent scheme was created, how it was run, or its scope. *See U.S. ex rel. Bledsoe*, 342 F.3d at 643.

Plaintiffs assert that both Defendants "put forth material misrepresentations regarding the quality of [Defendant] BatchMaster's product," and Defendant Dimension "presented [the financing agreements to Plaintiffs] based upon material misrepresentations." (ECF No. 4, PageID.44.) These assertions fail to identify misrepresentations Defendant Dimension specifically put forward or participated in. *See Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 753 (6th Cir. 2014) (affirming dismissal of a complaint under Rule 9(b) when the plaintiff failed to "indentif[y] the faulty information" the defendant provided). Asserting that Defendant Dimension was involved in a scheme and "misrepresentations" occurred is insufficient to state a claim under Rule 9(b). *See Sanderson*, 447 F.3d at 877.

12

Where Plaintiffs' complaint actually describes misrepresentations, key details are left out. "[T]he who, what, when, where, and how" are stated only in broad strokes and with little explanation. *Id.* Plaintiffs allege Defendant BatchMaster represented that the software would have "the capability to handle accounting, sales, purchasing and supply management," among other features.[4] (ECF No. 4, PageID.41.) But no details are provided as to the place, date, and time of the alleged statements. Plaintiffs do not specify an employee or officer working for Defendant BatchMaster who made the representations, nor do they allege to which individuals in Plaintiffs' companies the representations were made. Plaintiffs merely state in general terms that Defendant BatchMaster made misrepresentations to Plaintiffs regarding the quality of the software, and, in October 2018, Plaintiffs entered the purchase agreements. (*Id.*, PageID.34, 41.) That does not satisfy Rule 9(b). *Compare U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 505 (6th Cir. 2008) (finding that a plaintiff satisfied Rule 9(b) when it identified and attached specific financial reports filed with the federal government that allegedly contained misrepresentations), *with Ullmo ex rel. Ullmo v. Gilmour Academy*, 273 F.3d 671, 678 (6th Cir. 2001) (affirming dismissal of a claim, despite allegations of fraudulent representations, where the plaintiffs "did not plead any [specific] representations in their complaint").

The Sixth Circuit has affirmed dismissal of complaints containing greater factual detail than the complaint in this case. In *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, a finance firm allegedly claimed securities backed by mortgage loans were

---

[4]     Plaintiffs do not allege Defendant Dimension made or participated in this statement. (*See* ECF No. 4, PageID.41.)

"reasonably safe" and "made according to reasonably prudent underwriting standards." 683 F.3d 239, 245 (6th Cir. 2012). In fact, the mortgage loans were allegedly not issued using "prudent underwriting standards" and the real estate used as security did not have accurate valuations. *Id.* The plaintiff added that media reports and expert studies tied the mortgage originators to unsound lending. *Id.* at 256. Nonetheless, the Sixth Circuit found that the plaintiff had not alleged enough facts under Rule 9(b) to connect the specific mortgage loans at issue with abusive lending practices. *Id.* The complaint "[dealt] only in probabilities" and was properly dismissed. *Id.* Here, Plaintiffs allege Defendant BatchMaster misrepresented the quality of the software product and that Defendant Dimension was somehow involved. No detailed allegations connect Defendant Dimension to any material misrepresentation that harmed Plaintiffs' businesses. *See Custom Data Sols., Inc.*, 733 N.W.2d at 104-05.

In *Heinrich v. Waiting Angels Adoption Services, Inc.*, six couples alleged an adoption service falsely advertised on its website that certain children were available for adoption. 668 F.3d 393, 406 (6th Cir. 2012). The complaint alleged that the adoption service failed to send additional photos of the children or their medical information; the government allegedly had no records of a pending adoption case despite a couple submitting an adoption request through the service; the service, according to the couples, did not respond to their demands that service prove adoption and foster fees went to the home country of the children; and the service allegedly provided a false explanation for cancelling an adoption. *Id.* at 401. Further, the complaint alleged a couple reached out to the adoption service and the service told them that a new and previously unknown attorney was handling adoptions. *Id.* at 401-02. The service also

14

allegedly informed the couple that the service did not have birth certificates for the children. *Id.* Despite this added detail, the Sixth Circuit affirmed dismissal of the complaint under Rule 9(b). *Id.* at 406. The court noted that the plaintiffs did not identify who within the adoption service told the couple that the service did not possess birth certifications. *Id.* In addition, while the allegations raised "suspicio[ns]" that the agency was lying about the availability of children, there were not enough facts to allow a reasonable inference "that the children advertised were actually unavailable." *Id.* The plaintiffs in *Heinrich* alleged far greater detail than the largely conclusory statements made in Plaintiffs' complaint. Yet the *Heinrich* plaintiffs, like Plaintiffs here, did not meet Rule 9(b)'s enhancing pleading standard.

Having concluded that the claim against Defendant Dimension fails to satisfy Rule 9(b), the remaining question is whether the claim should be dismissed with prejudice. Plaintiffs assert that "[i]f the [c]ourt finds the allegations [in the complaint] lacking, dismissal, particularly dismissal with prejudice, is . . . not appropriate." (ECF No. 13, PageID.248.) However, Plaintiffs have not filed a motion to amend their complaint. They previously amended the complaint in May 2020 as of right. *See* Fed. R. Civ. P. 15(a)(1). (ECF No. 4.) In addition, Plaintiffs do not offer a proposed amended complaint. They do not explain how leave to amend would result in a properly pleaded claim.

The Sixth Circuit has repeatedly affirmed dismissal of claims with prejudice after successful Rule 12(b) motions when the plaintiffs neither moved to amend nor offered proposed amendments. *See Islamic Center of Nashville v. Tennessee*, 872 F.3d 377, 387 (6th Cir. 2017) ("Here, there is no indication that [the plaintiff] ever filed a motion to amend or a proposed amendment with the district court."); *CNH Am. LLC v. Int'l Union*,

645 F.3d 785, 795 (6th Cir. 2011) ("[I]f a party does not file a motion to amend or a proposed amended complaint, it is not an abuse of discretion for the district court to dismiss the claims with prejudice."). Furthermore, "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought does not constitute a motion [to amend]." *La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quotations removed). "Plaintiffs [are] not entitled to an advisory opinion from the [c]ourt informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Id.* (quotations removed); *see also Islamic Center of Nashville*, 872 F.3d at 387 n.7 (quotations removed) ("The problem with the lack of a motion or proposed amendment . . . is that without viewing the proposed amendment, it is impossible for the district court to determine whether leave to amend should have been granted.").

Thus, a request such as Plaintiffs', asking the court to "allow [them] to amend their [c]omplaint" if "the court finds the allegations lacking," (ECF No. 13, PageID.250), lacking any detail as to how an amendment would support a viable claim, does not prevent dismissal with prejudice. *See La. Sch. Emps. Ret. Sys.*, 622 F.3d at 486 (affirming dismissal with prejudice when the plaintiffs asked in a brief opposing dismissal for "an opportunity to move to amend the pleadings and demonstrate that an amendment would cure any deficiencies"); *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017) (affirming dismissal with prejudice where the plaintiffs requested in a brief that the court "afford [the plaintiffs] an opportunity to file an amended complaint to address [any] concerns [the court identified]").

Plaintiffs filed the complaint in April 2020, (ECF No. 1), and amended it in May 2020. (ECF No. 4.) They have had since July 2020, when Defendant Dimension filed its motion to dismiss, to move to amend or present proposed amendments. (ECF No. 7.) After almost four months, Plaintiffs provide the court with no basis to properly consider whether further amendment is justified, *Islamic Center of Nashville*, 872 F.3d at 387 n.7, asking in essence that the court identify deficiencies in the complaint without any consequences. The court will not expend judicial resources on Plaintiffs' behalf, *La. Sch. Emps. Ret. Sys.*, 622 F.3d at 486, and the claim against Defendant Dimension will be dismissed with prejudice.

## IV. CONCLUSION

Plaintiffs' claims against Defendant BatchMaster are covered by arbitration clauses. Under Rule 9(b), Plaintiffs have not pled with particularity the remaining civil conspiracy claim against Defendant Dimension. Accordingly,

IT IS ORDERED that Defendant BatchMaster's "Motion to Dismiss" (ECF No. 11) is GRANTED. Plaintiffs' claims of breach of contract (Count I), fraudulent inducement to contract (Count II), and conspiracy to commit fraud as to Defendant BatchMaster (Count III) are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant Dimension's "Motion to Dismiss" (ECF No. 7) is GRANTED. Plaintiffs' claim of conspiracy to commit fraud as to Defendant Dimension (Count III) is DISMISSED WITH PREJUDICE.

s/Robert H. Cleland                        /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  December 14, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 14, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                                      /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-11017.AMERICANSPECIALTYOILS.MotionstoDismiss.RMK.4.docx